**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**ERIE DIVISION**

| | |
|---|---|
| AMBER SMITH, Individually and For Others Similarly Situated<br><br>v.<br><br>WELLNOW URGENT CARE, P.C. | **Case No.** ________________<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Amber Smith (Smith) brings this class and collective action to recover unpaid wages and other damages from WellNow Urgent Care, P.C. (WellNow).

2. WellNow employed Smith as one of its Hourly Employees (defined below) in Pennsylvania.

3. Smith and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. WellNow pays Smith and the other Hourly Employees by the hour.

5. But WellNow did not pay the Hourly Employees for all hours worked.

6. Instead, WellNow required Smith and the other Hourly Employees to clock out for 30 minutes a day for so-called "meal breaks" (WellNow's "meal deduction policy").

7. But WellNow regularly fails to provide or make available *bona fide* 30-minute meal breaks to Smith and the other Hourly Employees, who were thus unable to take a meal break, despite clocking out.

8. And if Smith and the other Hourly Employees did not clock out for their so called "meal breaks," WellNow simply deducted 30 minutes from their hours and pay.

9. Smith and the other Hourly Employees were thus not paid for all hours worked.

10. Additionally, WellNow requires the Hourly Employees to clock in and out for their shifts via its timekeeping system, but WellNow automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit (WellNow's "rounding policy").

11. Additionally, WellNow requires Smith and other Hourly Employees to travel between multiple WellNow locations during their workday.

12. But WellNow does not pay Smith and other Hourly Employees for the time they spend traveling from one WellNow location to a second WellNow location (WellNow's "unpaid travel policy").

13. Finally, WellNow does not pay Smith and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

14. Instead, WellNow pays Smith and the other Hourly Employees non-discretionary bonuses that it fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates (WellNow's "bonus pay scheme").

15. WellNow's meal deduction policy, rounding policy, unpaid travel policy, and bonus pay scheme violates Pennsylvania Minimum Wage Act (PMWA) by failing to compensate Smith and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

16. Additionally, its meal deduction policy, rounding policy, unpaid travel policy, and bonus pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Smith and the other Hourly Employees of earned wages, including overtime wages, on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

17. This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

18. Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of Smith's proposed class of Hourly Employees and WellNow are citizens of different states (indeed, Smith is a Pennsylvania citizen, whereas WellNow is an Illinois and New York citizen); and (c) the proposed class of Patient Care Workers exceeds 100 members.

19. This Court has general personal jurisdiction over WellNow because it is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

20. Venue is proper because a substantial part of the events or omissions giving rise to this claim occurred in McKean County and Elk County, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

21. Specifically, WellNow employed Smith and other Hourly Employees in McKean County and Elk County pursuant to its meal deduction policy, rounding policy, unpaid travel policy, and bonus pay scheme.

## PARTIES

22. Smith worked for WellNow as a clinic shift lead from approximately November 2021 until December 2024, in Olean, New York until 2022 and based out of Bradford, Pennsylvania from 2022 until December 2024.

23. Throughout her employment, WellNow employed Smith under its meal deduction policy, rounding policy, unpaid travel policy, and bonus pay scheme.

24. Smith brings this class action on behalf of herself and all other similarly situated employees who worked for WellNow under its meal deduction policy, rounding policy, unpaid travel

policy, and/or bonus pay scheme.

25. The putative Pennsylvania class of similarly situated employees is defined as:

> **All hourly WellNow employees who worked in, or were based out of, Pennsylvania[1] during the last 3 years through final resolution of this action (the "Hourly Employees").**

26. WellNow is a New York corporation and maintains its principal place of business in Chicago, Illinois.

27. WellNow can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

## FACTS

28. "WellNow Urgent Care is one of the fastest-growing providers of urgent medical care, telehealth and occupational medicine services in the United States, with more than 150 centers across Illinois, Indiana, Michigan, New York and Pennsylvania."[2]

29. To meet its business objectives, WellNow employs workers, including Smith and the other Hourly Employees, to provide healthcare services to its patients.

30. WellNow owns and/or operates all the urgent care facilities where Smith and the Hourly Employees work.

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

[2] https://www.wellnow.com/about/ (last visited August 7, 2025).

31. WellNow controls and dictates Smith's and the Hourly Employees' rates and methods of pay.

32. WellNow controls, oversees, and directs Smith and the Hourly Employees, including through payroll policies, meal break policies, performance standards, and other employment policies.

33. At all relevant times, WellNow has controlled, overseen, and directed Smith and the Hourly Employees through, including but not limited to, hiring, firing, disciplining, and other employment practices.

34. Indeed, WellNow dictates the hiring standards and all other employment policies and practices in place at its numerous urgent care facilities where Smith and the Hourly Employees work.

35. WellNow controls Smith's and the other Hourly Employees' schedules and assignments.

36. WellNow requires Smith and the Hourly Employees to follow WellNow's policies, procedures, and specifications.

37. Smith's and the Hourly Employees' work must strictly adhere to the quality standards put in place by WellNow.

38. WellNow requires Smith and the Hourly Employees to perform their job duties in accordance with WellNow's expectations, guidelines, policies, procedures, and directives.

39. WellNow's various urgent care facilities have centralized ownership, management, payroll, and/or human resources department.

40. Without the patient care work performed by Smith and the Hourly Employees, WellNow would not be able to complete its business objectives of operating urgent care facilities across the country, including in Pennsylvania.

41. WellNow maintains employment records for the employees working at its various urgent care facilities, including Smith and the Hourly Employees.

42. In sum, the patient care employees that work in WellNow's various urgent care facilities, including Smith and the Hourly Employees, are WellNow's employees.

43. For example, WellNow employed Smith as a clinic shift lead based in Olean, New York and Bradford, Pennsylvania from approximately November 2021 until December 2024.

44. Smith's primary job duties included completing patient intakes, gathering patient histories, taking patient vital signs, administering testing to patients, taking samples for testing, training new employees, and ordering clinic supplies.

45. Smith regularly worked more than 40 hours a workweek.

46. Indeed, Smith typically worked approximately 12 hours a day and 3 to 5 days a week "on the clock" (36 to 60 hours a workweek).

47. Likewise, the other Hourly Employees typically work approximately 12 hours a day and 3 to 5 days a week "on the clock" (36 to 60 hours a workweek).

48. And Smith and the other Hourly Employees are required to report their "on the clock" hours worked via WellNow's designated WorkDay timekeeping system.

49. WellNow paid Smith approximately $22 an hour.

50. Throughout her employment, WellNow subjected Smith to its common practice of deducting 30 minutes from her hours worked and wages each shift for "meal breaks," regardless of whether she actually received a *bona fide* meal break.

51. Smith and the Hourly Employees perform their jobs under WellNow's supervision, and using materials, equipment, and technology approved and supplied by WellNow.

52. WellNow requires Smith and the Hourly Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

53. At the end of each pay period, Smith and the Hourly Employees receive wages from WellNow that are determined by common systems and methods that WellNow selects and controls.

54. WellNow requires Smith and the Hourly Employees to record their hours worked using the timekeeping system WellNow selects and controls.

55. Further, WellNow subjects Smith and the other Hourly Employees to a common policy and practice of requiring these employees to clock out for 30 minutes for so called "meal breaks."

56. WellNow requires Smith and the other Hourly Employees to clock out and deducts this time regardless of whether they actually receive a full, uninterrupted, 30-minute meal break.

57. And if Smith and the other Hourly Employees do not clock out, WellNow simply deducts 30 minutes from their hours and wages.

58. Indeed, WellNow simply assumes Smith and the Hourly Employees receive a *bona fide* meal break each workday.

59. But WellNow fails to provide Smith and the Hourly Employees with *bona fide* meal breaks.

60. Instead, WellNow requires Smith and the Hourly Employees to remain on duty and working throughout their shifts and regularly subjects them to interruptions during their unpaid meal breaks.

61. Indeed, because of these regular work interruptions, Smith and the Hourly Employees are not free to engage in personal activities during unpaid "meal breaks."

62. Rather, during their unpaid "meal breaks," Smith and the Hourly Employees are required to perform their regular patient care job duties and responsibilities.

63. Thus, Smith and the Hourly Employees routinely spend their unpaid "meal breaks" performing patient care work for WellNow's, not their own, predominant benefit.

64. This unpaid time is compensable under Pennsylvania law because WellNow knew, or should have known, that (1) Smith and the Hourly Employees were performing unpaid work during

their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during attempted "meal breaks" (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped "meal breaks" due to work demands, (5) the "meal break" was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their "meal breaks" because of regular interruptions, and (7) they predominantly spent their unpaid "meal breaks" performing their regular patient care duties for WellNow's predominant benefit.

65. In addition to deducting from these employees' wages for so called "meal breaks," WellNow also subjects Smith and the other Hourly Employees to its rounding policy.

66. Specifically, WellNow automatically rounds their recorded clock in and clock out punches to the nearest quarter hour for WellNow's—not the employees'—primary benefit.

67. In conjunction with WellNow's rounding policy, it also prohibits Smith and the other Hourly Employees from clocking in and out for their shifts more than 7.5 minutes before their shift start times and more than 7.5 minutes after their shift end times.

68. And WellNow considers Smith and the other Hourly Employees tardy and takes disciplinary action or threatens to do so if they clock in past their scheduled start time or clock out before their scheduled end time.

69. Likewise, WellNow takes disciplinary action or threatens to do so if they clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

70. WellNow further requires and expects Smith and the other Hourly Employees to perform their normal job duties immediately upon clocking in.

71. By enforcing these policies together, WellNow ensures its rounding policy benefits WellNow to the detriment of Smith and the other Hourly Employees.

72. Thus, under WellNow's rounding policy, Smith and the other Hourly Employees are

denied wages for all hours worked, and overtime wages for all overtime hours worked during workweeks in which they work more than 40 hours, in violation of Pennsylvania law.

73. And WellNow imposed its unpaid travel policy on Smith and the other Hourly Employees.

74. Specifically, WellNow required Smith and other Hourly Employees to clock in and perform their regular job duties, clock out and drive to a second WellNow location, and then clock back in and perform their regular job duties at the second location.

75. For example, during November and December 2023 WellNow opened a new clinic in St. Marys, Pennsylvania.

76. WellNow required Smith to clock in and perform her regular job duties in the Bradford WellNow clinic she typically worked in, then clock out and drive to the St. Marys WellNow clinic, clock back in and perform her regular job duties plus additional job duties to assist with the opening of the new clinic, then clock out once she completed these duties, and drive back to Bradford.

77. WellNow required Smith to drive 45 minutes during the middle of her workday, off the clock, to the St. Marys clinic and 45 minutes back to Bradford for approximately three weeks.

78. WellNow likewise required Smith to drive off the clock, without compensation from the Bradford clinic to the Dubois clinic, which was approximately two hours each way, for approximately three weeks in 2023.

79. WellNow failed to exercise its duty to ensure Smith and the Hourly Employees were not performing work that WellNow did not want performed during their unpaid "meal breaks," drive time, and due to its rounding policy.

80. Despite accepting the benefits, WellNow did not pay Smith and the Hourly Employees for the compensable work they performed during their "meal breaks," drive time, and at the beginning and end of their shifts.

81. Thus, under WellNow's meal deduction policy, unpaid travel policy, and rounding policy, Smith and the Hourly Employees are denied wages, including overtime wages, for on duty "meal breaks," drive time, and for time worked at the beginning and end of their shifts.

82. WellNow knows Smith and the Hourly Employees routinely perform work "off the clock" during their unpaid "meal breaks," driving between clinics, and at the beginning and end of their shifts because WellNow expects and requires these employees to do so.

83. But WellNow does not pay Smith and the other Hourly Employees for their "off the clock" work, including hours worked in excess of 40 in a workweek.

84. Smith worked more than 40 hours in at least one workweek during the last three years.

85. Likewise, each Hourly Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

86. Finally, WellNow does not pay Smith and the other Hourly Employees at the required premium overtime rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

87. Instead, WellNow pays Smith and the other Hourly Employees under its bonus pay scheme.

88. Specifically, WellNow agrees to pay and subsequently pays Smith and the other Hourly Employees non-discretionary bonuses for work they perform, including mobile allowances, patient satisfaction bonuses, and sign on bonuses, that it excludes from their regular rates of pay for overtime purposes.

89. Thus, under its bonus pay scheme, WellNow does not pay Smith and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek, in violation of Pennsylvania law.

## CLASS ACTION ALLEGATIONS

90. Smith brings her claims as a class action on behalf of herself and all other similarly situated employees.

91. Like Smith, the other Hourly Employees are victimized by WellNow's meal deduction policy, unpaid travel policy, rounding policy, and bonus pay scheme.

92. Other Hourly Employees worked with Smith and indicated they were paid in the same or similar manner under WellNow's meal deduction policy, unpaid travel policy, rounding policy, and bonus pay scheme.

93. Based on her experience with WellNow, Smith is aware WellNow's meal deduction policy, unpaid travel policy, rounding policy, and bonus pay scheme were imposed on other Hourly Employees.

94. The Hourly Employees are similarly situated in the most relevant respects.

95. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages at the agreed rate and overtime wages at the required premium rate—based on all remuneration—for all hours and overtime hours worked.

96. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class treatment.

97. Rather, WellNow's meal deduction policy, unpaid travel policy, rounding policy, and bonus pay scheme render Smith and the other Hourly Employees similarly situated for the purpose of determining their right to wages for all hours worked, including overtime wages at the required rate—based on all remuneration—for hours worked in excess of 40 in a workweek.

98. WellNow's failure to pay wages and overtime wages for all hours (including overtime hours) worked results from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the Hourly Employees.

99. WellNow's records reflect the number of hours the Hourly Employees recorded working "on the clock" each workweek and deductions for "meal breaks."

100. WellNow's records also show it automatically rounded the Hourly Employees' punches in and out.

101. WellNow's records also show it paid Smith and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

102. The back wages owed to Smith and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

103. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to WellNow's records, and there is no detraction from the common nucleus of liability facts.

104. Therefore, the issue of damages does not preclude class treatment.

105. Smith's experiences are typical of the experiences of the other Hourly Employees.

106. Smith has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class treatment.

107. Smith has an interest in obtaining the unpaid wages owed to the Hourly Employees under Pennsylvania law.

108. Smith and her counsel will fairly and adequately protect the interests of the Hourly Employees.

109. Smith retained counsel with significant experience handling complex class action litigation.

110. Absent this class action, many Hourly Employees will not obtain redress for their injuries, and WellNow will reap the unjust benefits of violating Pennsylvania law.

111. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

112. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and WellNow.

113. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

114. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

115. Among the common questions of law and fact are:

a. Whether WellNow required the Hourly Employees to clock out for "meal breaks";

b. Whether WellNow automatically rounded the Hourly Employees' punch in and punch out times;

c. Whether WellNow required the Hourly Employees to drive between clinics "off the clock" during the middle of their workdays;

d. Whether WellNow suffered or permitted the Hourly Employees to work "off the clock";

e. Whether WellNow paid the Hourly Employees non-discretionary bonuses;

f. Whether WellNow failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay; and

g. Whether WellNow failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

116. The Hourly Employees are known to WellNow, are readily identifiable, and can be located through WellNow's business and personnel records.

## WellNow's Violations Were Willful, Unreasonable, and Not the Result of a *Bona Fide* Dispute

117. WellNow knew it employed Smith and the other Hourly Employees.

118. WellNow knew it was subject to the PMWA's overtime provisions.

119. WellNow knew the PMWA required it to pay non-exempt employees, including Smith and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

120. WellNow knew it was subject to the WPCL.

121. WellNow knew the WPCL required it to pay employees, including its Hourly Employees, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

122. WellNow knew Smith and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours worked via its timekeeping system.

123. WellNow knew Smith and the other Hourly Employees were non-exempt employees entitled to overtime pay.

124. WellNow knew it paid Smith and the other Hourly Employees non-discretionary bonuses.

125. WellNow knew these non-discretionary bonuses were required to be but were not included in Smith's and the other Hourly Employees' regular rates of pay for overtime purposes.

126. And WellNow knew the PMWA required it to pay Smith and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

127. WellNow's failure to pay Smith and the other Hourly Employees wages, including overtime wages at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

128. WellNow's refusal to pay its Hourly Employees earned wages for all hours worked on their regular paydays and following the termination of their employment was unreasonable.

129. WellNow's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

130. WellNow knew its conduct violated the PMWA and WPCL.

131. WellNow knowingly, willfully, and/or in reckless disregard carried out its unlawful off the clock policy, rounding policy, and/or bonus pay scheme that deprived Smith and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the PMWA and WPCL.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
## (CLASS ACTION)

132. Smith brings her PMWA claim as a class action on behalf of herself and the other Hourly Employees pursuant to FED. R. CIV. P. 23.

133. WellNow's conduct violated the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

134. At all relevant times, WellNow was subject to the PMWA because WellNow was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

135. At all relevant times, WellNow employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

136. The PMWA requires employers, like WellNow, to pay non-exempt employees, including Smith and the other Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

137. WellNow violated, and is violating, the PMWA by employing non-exempt employees (Smith and the other Hourly Employees) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, including hours worked off the clock. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

138. WellNow's unlawful conduct harmed Smith and the other Hourly Employees by depriving them of the overtime wages they are owed.

139. Accordingly, WellNow owes Smith and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

140. Finally, Smith and the other Hourly Employees are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

## COUNT II
## FAILURE TO PAY EARNED WAGES UNDER THE WPCL
## (CLASS ACTION)

141. Smith brings her WPCL claim as a class action on behalf of herself and the other Hourly Employees pursuant to FED. R. CIV. P. 23.

142. WellNow's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

143. At all relevant times, WellNow was subject to the WPCL because WellNow was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

144. At all relevant times, WellNow employed Smith and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

145. The WPCL requires employers, like WellNow, to pay employees, including Smith and the other Hourly Employees, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

146. WellNow violated, and is violating, the WPCL by depriving the Hourly Employees of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

147. Smith and the other Hourly Employees' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

148. WellNow's unlawful conduct harmed Smith and the other Hourly Employees by depriving them of the earned wages they are owed.

149. WellNow's failure to pay Smith and the other Hourly Employees earned wages was not the result of a *bona fide* dispute.

150. Rather, WellNow knowingly failed to pay earned wages to Smith and the other Hourly Employees.

151. Accordingly, WellNow owes Smith and the other Hourly Employees their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

152. WellNow also owes Smith and the other Hourly Employees liquidated damages in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.10.

153. Finally, Smith and the other Hourly Employees are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

154. Smith demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Smith, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

b. An Order appointing Smith and her counsel to represent the interests of the Hourly Employees;

c. An Order finding WellNow liable to Smith and the other Hourly Employees for unpaid overtime wages owed under the PMWA plus all available penalty wages;

d. An Order finding WellNow liable to Smith and the other Hourly Employees for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to the greater of 25% of their unpaid wages or $500;

e. A Judgment against WellNow awarding Smith and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the PMWA and/or WPCL;

f. An Order awarding attorney's fees, costs, and expenses to the Hourly Employees;

g. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: August 12, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/Michael A. Josephson*
Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch, Esquire
TX Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
GOODRICH & GEIST, PC
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR SMITH & THE HOURLY EMPLOYEES**